1

1              UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF NEW YORK
2
- - - - - - - - - - - - - - - - - -X
3                                    :   06-MD-1775(JG)(VVP)
                                     :
4                                    :
                                     :
5   IN RE:  AIR CARGO SHIPPING       :   United States Courthouse
    SERVICES ANTITRUST LITIGATION    :   Brooklyn, New York
6                                    :
                                     :
7                                    :
                                     :   April 23, 2014
8                                    :   2:00 p.m.
                                     :
9                                    :
                                     :
10                                   :
- - - - - - - - - - - - - - - - - -X
11
                TRANSCRIPT OF STATUS CONFERENCE
12       BEFORE THE HONORABLE VIKTOR V. POHORELSKY
                UNITED STATES MAGISTRATE JUDGE
13
                  A P P E A R A N C E S:
14
    For the Plaintiffs:     KAPLAN FOX & KILSHEIMER, LLP
15                          850 Third Avenue
                            14th Floor
16                          New York, New York 10022
                            BY: ROBERT N. KAPLAN, ESQ.
17                              GREGORY K. ARENSON, ESQ.

18

19  For the Plaintiffs:     ROBINS, KAPLAN, MILLER & CIRESI, LLP
20                          601 Lexington Avenue
                            Suite 3400
                            New York, New York  10022
21                          BY:  HOLLIS L. SALZMAN

22

23                          LEVIN, FISHBEIN, SEDRAN & BERMAN
24                          510 Walnut Street
                            Suite 500
                            Philadelphia, PA 19106
25                          BY:  HOWARD J. SEDRAN

2

```
 1   Atlas Air Worldwide:     ROPES & GRAY LLP
     Holdings & Polar Air     Prudential Tower
 2   Cargo Worldwide, Inc.    800 Boylston Street
                              Boston, MA  02199
 3                            BY:  HARVEY J. WOLKOFF

 4

 5   Air China Limited:       WILSON, ELSER, MOSKOWITZ,
     Air China Cargo          EDELMAN & DICKER, LLP
 6                            150 East 42nd Street
                              New York, New York 10017
 7                            BY:  GEORGE N. TOMPKINS III

 8

 9   Air New Zealand Ltd.     ANDREWS KURTH LLP
                              1350 I Street, NW, Suite 1100
10                            Washington, DC 20005
                              BY:  MEENA T. SINFELT
11                                      AND
                              LYNNE M. FISCHMAN UNIMAN
12                              450 Lexington Avenue
                              New York, New York 10017
13

14

15   EVA Airways              KIRKLAND & ELLIS LLP
                              601 Lexington Avenue
16                            New York, New York 10022
                              BY:  JOYCE WING YAN TAM
17

18

19   Nippon Cargo Airlines    BAKER & HOSTETLER LLP
                              1050 Connecticut Avenue, NW
20                            Suite 1100
                              Washington, DC 20036-5304
21                            BY:  ROBERT J. BROOKHISER

22

23   Air India:               RUSKIN MOSCOU FALTISCHEK
                              1425 RXR Plaza
24                            14th Floor, East Tower
                              Uniondale, New York 11556
25                            BY:  E. CHRISTOPHER MURRAY
                                     JENNIFER L. HARTMANN
```

3

1  Asiana Airlines Inc.        O'MELVENY & MYERS LLP
                               1625 Eye Street, N.W.
2                              Washington, D.C.  20006-4001
                               BY:  IAN SIMMONS
3                                   SCOTT HAMMACK

4

5  Court Reporter:            RONALD E. TOLKIN, RPR, RMR, CRR
                              Official Court Reporter
6                             Telephone: (718) 613-2647
                              Facsimile: (718) 613-2677
7                             ronald_tolkin@nyed.uscourts.gov

8
   Proceedings recorded by computerized stenography.  Transcript
9  produced by Computer-aided Transcription.

10                      *        *        *

11

12            (Time noted:  2:10 p.m.)

13            THE COURT:  Please be seated.

14            Good afternoon.

15            LAW CLERK:  Civil cause for status conference,

16  06-MD-1775, In Re:  Air Cargo Shipping Service Antitrust

17  Litigation.

18            THE COURT:  Good afternoon.  I received the agenda.

19  It's a short agenda.  Maybe it'll take a little bit longer, it

20  may take a little time to work it out.  But in any event, I'll

21  follow that unless there is anything that somebody wants to

22  add to the agenda.

23            So the scheduling going forward, Plaintiffs will

24  want -- I think the principle issue is the plaintiffs want to

25  be able to deal with summary judgment motions now,

1  notwithstanding the pending class motion.  It does seem to me

2  that the defendant's argument that, you know, that this may

3  put the parties to unnecessary work, has at least some merit.

4       I don't have a sense of what kind of motions are

5  going to be made.  So it's kind of hard to know how a decision

6  on the class certification motion, to the extent that it's

7  granted, might shape motions down the line.  But it does seem

8  to me that it's going to have some impact on what motions

9  ultimately would be made.

10       MR. KAPLAN:  Your Honor, Robert Kaplan.  One thing

11  that wasn't in our papers, there is precedent in this

12  courthouse in the Interchange Antitrust Litigation In Re:

13  Payment Card Interchange Fee and Merchant Discount Antitrust

14  Litigation, which is MDL 1720 before Magistrate Judge James

15  Orenstein and Judge Gleeson.

16       THE COURT:  Yes.

17       MR. KAPLAN:  In that case, the class certification

18  motion is completely briefed and argued, and then there was a

19  schedule while that was pending for summary judgment and

20  Daubert motions.  And then there was a separate motion, the

21  class motion was argued before Magistrate Judge Orenstein.

22  And then there was briefing on the summary judgment and

23  Daubert.  And then there was a separate hearing while the

24  class motion was pending, the summary judgment before Judge

25  Gleeson.  And then that afternoon, the Daubert before

IN RE:  AIR CARGO SHIPPING SERVICES                    5

1   Magistrate Judge Orenstein.

2        So there's precedent.  I mean, it seems to us that

3   there are issues here like Defendants are going to say they

4   weren't members of a conspiracy.  You know, there's no -- and

5   that can be briefed.  They have certain affirmative defenses.

6   They're claiming filed rate.  We're saying that doesn't apply.

7        THE COURT:  I'm sorry?

8        MR. KAPLAN:  Filed rate.  We say that doesn't apply

9   outside the United States.  They're claiming sovereign

10  immunity, they're claiming sovereign compulsion.  Not all of

11  them, different ones claiming different things.

12       So it's our feeling there's no reason why that can't

13  be briefed.  What they're talking about is waiting not only

14  for your report and recommendation, but then an objection,

15  appeals to Judge Gleeson, and then an 823(f) petition.

16  Meanwhile, we're sitting around.

17       These basic issues are not going to change after

18  class certification.  You're still going to have to decide,

19  you know, Defendant X was a member of the conspiracy.  We say

20  there are issues of facts and we have enough evidence on all

21  of them.  They're going to say certain of the Asian carriers,

22  these rates were approved in --

23       THE COURT:  I understand.

24       MR. KAPLAN:  So that's our position, why not go

25  ahead and do as much of this as we can.

IN RE:  AIR CARGO SHIPPING SERVICES                    6

1       THE COURT:  I understand the notion that there are

2   things that could be taken care of now that are not directly

3   effected by the class certification decision.

4       I'll hear from the defendants.

5       MS. SINFELT:  Good afternoon, Your Honor.

6       THE COURT:  Your name?

7       MS. SINFELT:  Meena Sinfelt, liaison counsel for the

8   defendant.

9       The issue that we have that we think is most

10  important right now is the motion, this would be a piecemeal

11  summary judgment.  We'd have a partial summary judgment motion

12  on, as Your Honor said, issues that will probably not change.

13  But there are clearly issues for the defendants that may

14  change, particularly if the class is not certified.  I mean,

15  that is obviously what we've been arguing for here, that we're

16  not part of a conspiracy, and that this class shouldn't be

17  certified.

18      So to push forward with piecemeal some of these

19  motions or partial motions doesn't really make any sense.  It

20  doesn't really create unnecessary work at this time.

21      THE COURT:  How?  Are you saying that if class

22  certification is denied, that you think these motions will

23  never be made?

24      MS. SINFELT:  Well, Your Honor, I think that they

25  wouldn't be made in this context or in this format.  Who knows

Case 1:09-cv-01172-JG-VVP  Document 3  Filed 04/28/14  Page 7 of 38 PageID #: 44

1    what form the class is going to take or if it would go under

2    individual litigations, or who knows who would still be left

3    in the litigation, the defendants that would be left in the

4    litigation at that point.  And it certainly doesn't make any

5    sense to file those motions right now, at this time, when we

6    could be waiting, you know, six months.  Who knows.

7              THE COURT:  When, if not now?

8              MS. SINFELT:  I think that is really the issue.  The

9    defendants are not against moving forward with this case at

10   all.  It's just the proper timing.  We're not trying to stall

11   indefinitely, Your Honor.

12             THE COURT:  My question is when?  Would you say that

13   once class certification, a report and recommendation on class

14   certification is made, that that would be the time to then go

15   forward with motions, summary judgment practice.

16             MS. SINFELT:  No, Your Honor.  The defendants take

17   the position that we shouldn't be moving forward on summary

18   judgment motions until a final decision.

19             THE COURT:  You mean after an appeal.

20             MS. SINFELT:  After an appeal.

21             Also, Your Honor, because I'd like to point out that

22   we have some serious outstanding discovery issues that have

23   not been resolved, and are not close to being resolved, that

24   would absolutely affect any summary judgment motions.

25             THE COURT:  Which ones are those?

1       MS. SINFELT:  I will speak generally on behalf of

2   this, and then I will defer to my colleagues to give you

3   specifics.  So Air New Zealand filed contention interrogatory

4   in the middle of December, and we've received only objections

5   and no responses.  We have been working with the plaintiffs

6   and we do expect to receive responses but not until the end of

7   May.

8           Even then, we're not sure what kind of responses

9   we'll be receiving.  So there's always the potential that

10  we're going to have a motion to compel.  And obviously we

11  would not want to move forward on -- we could not move forward

12  on summary judgment until having that vital information.  And

13  I know that four of the other defendants are also waiting for

14  information.

15          And I'll, right now, defer to Asiana.

16      THE COURT:  Other than contention interrogatories,

17  what aspects of discover remain open?  Did you want to speak

18  to that or did you want Asiana to do that.

19      MS. SINFELT:  I believe it is all interrogatories,

20  we have four to five outstanding interrogatories.

21      THE COURT:  Are you talking about something that's

22  separate from the contention interrogatories.

23      MS. SINFELT:  Yes, Your Honor.  There are four other

24  defendants who have outstanding interrogatories.  One

25  defendant with a document request.  We also have three to four

IN RE:  AIR CARGO SHIPPING SERVICES                    9

1   defendants, I believe, that have open 30(b)(6) depositions.

2   Those are now scheduled for a deadline at the end of May.

3   However, I'm not sure if that will be accomplished at that

4   point or if those parties will ask for a further extension.

5           THE COURT:  And that's it.  So we have some 30(b)(6)

6   depositions still open.  At least one set of document requests

7   and various interrogatories.

8           MS. SINFELT:  Yes, Your Honor.  With respect to the

9   30(b)(6) depositions, the parties had all agreed to an

10  extension to the end of May because we thought most of these

11  issues could be worked out by declaration and so live

12  testimony would not be needed.  However, we were just recently

13  informed that we now have a third party who is going to have a

14  live deposition because, obviously, a declaration was not

15  able --

16          THE COURT:  You're talking about a nonparty?

17          MS. SINFELT:  A nonparty.

18          THE COURT:  Anybody else want to be heard from the

19  defendant's side?

20          MR. SIMMONS:  Ian Simmons for Asiana.

21          One example of us not knowing whether to move for

22  summary judgment until there is a class cert decision, one

23  example could be we don't know if the Court will deny class

24  certification in its entirety or whether it will ex-U.S.

25  routes or deny it for inbound routes.  Remember, the case is

IN RE:  AIR CARGO SHIPPING SERVICES                    10

1   about all routes into and out of the United States, every

2   point in the world into the U.S. for a six-month period.

3          We would be moving for summary judgment on the extra

4   territorial claims on a statute that we've agreed for inbound

5   commerce saying the Court doesn't have jurisdiction on it, but

6   that would not be necessary if the Court denied class cert for

7   inbound routes.  We just don't know.

8          So there's a number of summary judgment theories

9   that will turn on the scope of the class cert decision.  And

10  we put them in the letter that was presented to the Court.

11  The Second Circuit is pretty clear that summary judgment

12  should be decided once we know whether or not we're dealing

13  with the class.  One of the reasons is summary judgment is not

14  binding on a class if it's ruled on prior to the certification

15  of that class.  We think there should be a ruling on that.

16         So we think that's the efficient way to go.  There

17  may not be motions to bring depending on what the ruling is.

18  My recommendation would be that the defendants put it in a

19  letter to be dealt with when the class cert decision comes

20  down.  The parties can meet and confer, figure out where we go

21  from there.  That's what I would ask of the Court.

22         I would say, you know, we are going to be sending --

23  for Asiana, we are sending for plaintiffs, we will be moving

24  to compel.  We are at an impasse on very basic interrogatories

25  that they will not answer.  Trying to rush, get a date for

IN RE:  AIR CARGO SHIPPING SERVICES                    11

1   summary judgment when we don't have necessary information from

2   them, is not the proper way to proceed.

3          MR. WOLKOFF:  Your Honor, Harvey Wolkoff on behalf

4   of Polar.

5          I would start fundamentally with the fact that there

6   are six named plaintiffs here, Your Honor.  And Polar didn't

7   do business with five and a half of them.  That is, five of

8   them not at all and one of them just outbound and not inbound.

9   If the class is not certified, that's a very different case

10  against Polar with regard to half of the plaintiffs.  And

11  whether we would then file a motion for summary judgment at

12  all, I don't know.  But we would have to decide based upon who

13  the plaintiffs are and what kind of business they did.  And,

14  frankly, where they did the business with Polar.

15         Your Honor may recollect that Polar did plead

16  guilty, but to a very narrow conspiracy involving business

17  from the United States to Australia for a very limited time

18  period ending in April of 2003.  It doesn't even begin to

19  suggest a global conspiracy with regard to every country for a

20  period of time as expansive as the plaintiffs are suggesting

21  here.

22         So it very much matters to what we do.  And,

23  therefore, the time that we would consume on the part of the

24  Court, just with regard to who the parties would continue to

25  be, what the claims would continue to be, what kind of

IN RE:  AIR CARGO SHIPPING SERVICES                12

1   defenses we would have, it's an entirely different picture.

2         We would be spinning a lot of wheels, Your Honor.

3   Not only the parties but Your Honor would be as well.  We

4   would be consuming a lot of court time if we went forward on

5   that basis.  We have expert discovery to do.

6         And we have interrogatories, Your Honor.  We would

7   not agree that they're contention interrogatories, but

8   whatever one would put a name to them, we were told by the

9   plaintiffs, we'll tell you what, we're going to answer those

10  interrogatories after fact discovery is closed and we know

11  more based upon the fact discovery they take.

12        These are outstanding interrogatories.  They're

13  talking about getting ready for a trial, they haven't even

14  answered our basic interrogatories that we served back in

15  2010.  We're still waiting for answers.  We haven't finished

16  fact discovery, as has been suggested.  As soon as we do, we

17  want answers to our interrogatories.  We're going to move to

18  compel them.

19        It's premature to do what the plaintiffs are

20  suggesting.  This is a complex trial we have before Your Honor

21  on class certification.  That's going to tell us a lot about

22  how this case will proceed.  So We would submit that we should

23  wait patiently for Your Honor to decide it and then make

24  decisions accordingly.

25        MR. BROOKHISER:  Bob Brookhiser on behalf of Nippon

1  Cargo Air.

2          In addition to the outstanding discovery and the

3  possibility of issues changing and second summary judgment

4  motions, I think there's also -- it may not be a, quote, due

5  process issue, but it's the reason why in virtually every case

6  the class certification decision has to precede the summary

7  judgment motion.  Because if we prevail on the summary

8  judgment motion and the class is certified, we get no benefit

9  from the summary judgment because people will opt out.

10         THE COURT:  I understand that.

11         MR. BROOKHISER:  And that's why the normal order is

12  to resolve certification, see what kind of case there is, then

13  have summary judgment.

14         MR. MURRAY:  Chris Murray for Air India.

15         Similar to Polar, I don't think there's any

16  indication that any of the 16 plaintiffs ever did business

17  with our client.  So if class certifications is denied, I'm

18  not sure there's any kind of claim that gets asserted here.

19         THE COURT:  Well, by the present plaintiffs anyway.

20         MR. MURRAY:  By the present plaintiffs.

21         In addition, likewise, with the other defendants we

22  served interrogatories about two and a half years ago.  We got

23  objections that they were contentious interrogatories, and

24  said that we'll answer them when factual discovery is

25  completed.  We have not gotten an answer.

IN RE: AIR CARGO SHIPPING SERVICES 14

1        MR. TOMPKINS: George Tomkins for Air China.

2        We're in a similar position as Air India. Although

3    we served interrogatories which plaintiffs characterized as

4    contention interrogatories, back in 2010 we had a couple of

5    meet and confers. The result was when fact discovery is over,

6    they'll answer them. To date, we have no answers.

7        THE COURT: All right. Mr. Kaplan?

8        MR. KAPLAN: What you just heard, Judge, is a lot of

9    fluff. Mr. Sedran will address these interrogatories. But

10   Judge Gleeson disagrees with them. As I said, in Interchange,

11   they briefed summary judgment while --

12       THE COURT: Well, he did it in that case. But I'm

13   not sure how much the issues in that case and how that case

14   lines up with this case in terms of the variability of the

15   defendants, how different they are from each other in relation

16   to the claims. I don't know that much about that case.

17       MR. KAPLAN: Right.

18       THE COURT: But my sense is, as I recall -- well, I

19   better not recall. I think this is very much a sort of case,

20   a specific kind of issue. And maybe if you know enough about

21   that other case you can line up why those cases are the same

22   as this case and should be treated the same way procedurally.

23       You certainly have precedent for the notion that

24   summary judgment can proceed. It has happened in this court.

25   I mean in this court and before Judge Gleeson, who is a judge

1  here.  So I'm aware that that is a possibility.  I mean, it

2  takes more than that, it seems to me, before I can be

3  convinced that that's the appropriate approach in this case.

4          MR. KAPLAN:  The defendants in Interchange were

5  opposing the class, that the class shouldn't be certified,

6  that all of the merchants were different.  That there were

7  different -- it's the same arguments that defendants always

8  make against class certification being made there.

9          But I would say I don't think that the summary

10  judgment would have to be piecemeal.  You can fully brief

11  summary judgment here.  And the point they make that the

12  plaintiffs, some of them bought from only one defendant,

13  that's a red herring because there's joint and several

14  liability.  They don't have to buy from every defendant.

15          We think there's precedent, it makes sense.  If Your

16  Honor wants some submission about why this is like

17  Interchange, we could prepare that.

18          Mr. Sedran will address the interrogatories.

19          THE COURT:  It seems to me that the easy answer for

20  all the open discovery is to actually set a deadline for any

21  motions to compel, and sort of get that out of the way.  That

22  needs to be gotten out of the way no matter what.

23          MR. SEDRAN:  Good afternoon, Your Honor.  Howard

24  Sedran.

25          There is a fact discovery deadline.  It was December

IN RE:  AIR CARGO SHIPPING SERVICES                    16

1  31st, 2013.  The fact discovery is finished, unless a

2  defendant or the defendants come forward and seek to modify

3  the scheduling order.  Moreover, a defendant or a party who

4  had a discovery problem, under the case law that we'll cite if

5  there is any motion practice, motions to compel needed to be

6  filed in the first part of December to be on the Court's

7  schedule to be heard at the end of December.  Discovery is

8  over.  So the defendants were sleeping on their rights.  It's

9  now just about the end of April.  What were they waiting for?

10          THE COURT:  I don't know.  I'm getting the

11  impression they were in discussions with you about ways to

12  resolve the issue.  You'll get a chance to speak again,

13  please.  To resolve the issues without involving the Court.

14  That's the impression I was getting from this.  Maybe that was

15  wrong.

16          MR. SEDRAN:  Let me respond defendant by defendant.

17  With respect to Air New Zealand, the parties resolved their

18  differences.  We have a confidential agreement about it.  We

19  will give them, ANZ, supplemental information at the end of

20  May.

21          THE COURT:  May I interrupt you for a moment.  Let

22  me play this out.  You're going to give them the information.

23  You made a deal to postpone getting that issue before the

24  Court.  They may not be happy with your responses.  They're

25  going to make the credible argument, I think, that they have a

IN RE:  AIR CARGO SHIPPING SERVICES                    17

1    right to come to me and resolve that.

2            MR. SEDRAN:  That's all very speculative, but the

3    question is, is that a basis not to move for summary judgment

4    because we worked things out?

5            With respect to Asiana, Asiana arguably stands alone

6    from all the other defendants because we have had discussion

7    about the outstanding discovery request.  It may be that we

8    are at an impasse and they're going to have to move to compel.

9            Our position will be that, in this case, in light of

10   the extensive discovery, if you remember, way back, in one of

11   our early motion arguments, the Court required the defendants

12   to provide information that they knew without looking at

13   document as to the meetings and communications about

14   surcharges, and they had to identify the dates, the

15   participants, the location, and the subject matter, but not

16   the substance.  And then the plaintiffs, in the course of

17   discovery, reciprocated and we provided charts of all the

18   information we learned that was not part of formal discovery.

19           So this is what we served on the defendants.  I

20   don't know if you need to look at it, but it's filled with

21   charts of all of the information we learned outside of

22   discovery.  Then the defendants, they served charts

23   identifying all the meetings and communications.  And then

24   there was much discovery in the case.

25           So our position is -- oh, let me just add one other

IN RE:  AIR CARGO SHIPPING SERVICES                    18

1    factor.  Then we have the extensive class certification

2    hearing.  And because of the rigorous analysis that's

3    necessary, in our opening class brief we laid out all of our

4    theories of the case in extensive briefing.  And at the

5    hearing before the Court, Mr. Landau, through the PowerPoint

6    presentation, laid out the theories of the case.

7            So our view is, Your Honor, that contention

8    discovery here is not necessary.  It's only busy work.  The

9    defendants know what we know.  So it would just be busy work

10   and a waste of time, and that we think the time would be

11   better spent briefing summary judgment than answering

12   contention discovery.  But that's not before you yet.

13           So Asiana and the plaintiffs have had discussions.

14   I think they can say that they thought maybe they could be

15   resolved.  But for all the other defendants, Your Honor, they

16   just slept on their rights and have done nothing to move the

17   ball forward.  For months and months we haven't heard from

18   them.  If they had a problem, they had to come and raise the

19   issue.  The discovery deadline is done.  They should have done

20   something.

21           Your Honor, I'll draw your attention to Rule 26

22   which says that a party need only supplement their answers to

23   interrogatories if the additional information has not

24   otherwise been disclosed in discovery.  So in the course of

25   all the depositions that have been taken, all sides know what

IN RE:  AIR CARGO SHIPPING SERVICES                 19

1   all the facts are.

2          So when the defendants say discovery is open, Your

3   Honor, it is not.  They're going to have to move, file papers

4   not only to compel but to explain to the Court why they slept

5   on their rights for a year, two years, and did nothing.  It's

6   time to move forward.

7          THE COURT:  What about the -- you've addressed the

8   interrogatories.  There were also some supposedly open

9   document requests and Rule 30(b)(6) depositions.

10         MR. SEDRAN:  Yes, Your Honor.  That actually

11  supports what I'm saying.  Towards the end of the discovery

12  deadline, the parties realized that they might need to take

13  some depositions to authenticate documents and lay the

14  foundation for the documents to be business records.

15         So the parties, as the rules provide, before the

16  close of the fact discovery deadline, moved, filed papers

17  before the Court to extend the deadline.

18         THE COURT:  For that purpose?

19         MR. SEDRAN:  For that purpose only.  There's one

20  stray deposition that was subject to the Court's order

21  allowing discovery to be delayed.  That's a third-party,

22  nonparty OAG.  Only to authenticate documents.  So there's

23  nothing that's going to delay anything.  It's just one

24  deposition, maybe another one will pop up, just to

25  authenticate documents, but it's subject to the Court's order.

IN RE:  AIR CARGO SHIPPING SERVICES                          20

1    And the parties moved as they should have before the close of

2    fact discovery.

3            So we say they were asleep, they waived their

4    rights, except for Asiana, arguably.  But at the end of the

5    day, they're not going to be entitled to the discovery they

6    want.  It's way too broad.  Under these circumstances, in

7    light of the extensive, extraordinary exchange of information,

8    I don't think they're going to get what they want.

9            MR. SIMMONS:  Your Honor, Ian Simmons for Asiana.

10   If I can just respond.

11           THE COURT:  I thought he sort of carved you guys

12   out.

13           MR. SIMMONS:  I just want to put something on the

14   record.  It's nice to hear that Asiana is not perceived as

15   sleeping on its rights.  He has kind of a footnote on that.

16   This is what Mr. Sedran wrote Asiana on September 19th.

17           THE COURT:  You know, gentlemen, I have a feeling

18   that all of this is going to be hashed out in the motions to

19   compel that people will make regardless what you tell me.  I'm

20   not going to prevent somebody from making those motions,

21   although I may end up ruling in Mr. Sedran's favor once I get

22   all the information.  So I'm not sure you need to make too

23   much of a record.

24           MR. SIMMONS:  If I could just have 20 seconds, 30

25   seconds.  He wrote us on December 19th, 2013, citing and

IN RE:  AIR CARGO SHIPPING SERVICES                    21

1    quoting from a letter that he wrote us on May 16, 2011, which

2    says, quote, "Plaintiffs' position is that appropriate

3    contention interrogatories need not be answered until sometime

4    after the close of discovery and in connection with pretrial

5    submissions," close quote.

6             The defendants served, a basic tone, who Asiana

7    conspired.  Corporations are inanimate things.  We want to

8    know who, when, where, who they talked to, and what's really

9    your basis that they should be able to write us.

10            This was served -- and we want to know -- he says

11   this is a joint and several liability case.  We want to know

12   what Judge Friendly said.  You know, each conspirator has to

13   own the conspiracy.  We want to know it about ourselves and we

14   want to know it about the people that they're trying to hold

15   us jointly and severally liable for.  They wrote us in 2011

16   saying I'll tell you after the close of discovery.

17            THE COURT:  You hit 30 seconds.

18            MR. SIMMONS:  We still don't have an answer.

19            MS. SINFELT:  Meena Sinfelt, if I may just make a

20   couple of quick points.  The plaintiff's argument here seems

21   to be we need to move forward because.  We don't have a reason

22   why, they just need to move forward because.  The defendants

23   are here saying --

24            THE COURT:  I think what they're saying is we want

25   to move forward.  The case is eight years old and we need to

1   get a resolution, which is a bona fide desire.

2           MS. SINFELT:  Absolutely.  However, the age of this

3   case is not attributable to any of the defendants sitting

4   here.

5           THE COURT:  Well, it's not a question of fault.

6   It's a question of getting it resolved.  That's the question.

7           MS. SINFELT:  I understand.  But the defendants are

8   here saying we cannot move forward because there are pending

9   discovery issues.  And while Mr. Sedran takes the position

10  that it's too speculative to say whether or not Air New

11  Zealand would need to file a motion to compel, I would take

12  issue with that because it took us three months to come to a

13  compromise on an initial response.

14          So, clearly, there may be very important issues that

15  we need to bring in front of the Court.  And the 30(b)(6)

16  issues I think are quite a bigger issue than Mr. Sedran is

17  again making it.

18          THE COURT:  What 30(b)(6) depositions do you

19  think there are?  Are there substantive 30(b)(6) depositions

20  that are open?

21          MS. SINFELT:  No, Your Honor.  But I think that's

22  even more important because these are just for authentication

23  of documents.  This is an issue which should have been worked

24  out between the parties.  Authentication is not a difficult

25  issue.  And, yet, we're now having to have live testimony at

IN RE:  AIR CARGO SHIPPING SERVICES                    23

1   least on one non-party.  So for Mr. Sedran to say that it's
2   not going to hold up the schedule is either disingenuous or he
3   has a crystal ball, because OAG Cargo was actually supposed to
4   have been done in March and then they had to apply for another
5   extension until the end of May.
6              THE COURT:  Is it just one 30(b)(6) deposition we're
7   talking about?
8              MS. SINFELT:  There's one for OAG Cargo which is a
9   nonparty.  However, there are at least two, I think, or three
10  possibly still remaining.  I know of Eva and I believe there
11  are others.
12             THE COURT:  Why can't they be done?
13             MS. SINFELT:  Your Honor, I can't speak on behalf of
14  those defendants and where they're at in the stages with the
15  plaintiffs on negotiations and getting declarations.
16             THE COURT:  Why would that affect summary judgment?
17             MS. SINFELT:  I'm not sure that it would affect
18  summary judgment, Your Honor.  Mr. Sedran was saying it's not
19  going to hold anything up down the line.  These issues have
20  already held things up.  OAG Cargo, a nonparty with no
21  interest here, couldn't come to any agreement with the
22  plaintiff on a declaration and had to apply for two extensions
23  so that they can now have a live deposition in a few weeks.
24             THE COURT:  Okay.
25             MR. KAPLAN:  Your Honor.

1          THE COURT:  Mr. Wolkoff.

2          MR. WOLKOFF:  Just briefly, if Your Honor wants to

3   hear a rejoinder to Mr. Sedran about why Polar did not sleep

4   on its rights.

5          THE COURT:  I don't need that.  I think they've

6   telegraphed what position they're going to take and what your

7   position your, I guess, soon to be made motion to compel.  I'm

8   not going to decline anyone from making any such motions.

9   That's not to say that the plaintiffs can't take whatever

10  position they rightfully can take.  There's no reason to argue

11  it now.  Basically, I'm not going to remember it.

12          MR. WOLKOFF:  Fine, Your Honor.

13          THE COURT:  It's not useful.

14          MR. WOLKOFF:  Just note for the record we do not --

15  in fact, we vehemently disagree with what Mr. Sedran said.  I

16  suppose it will be argued at some point in the future.

17          THE COURT:  Mr. Murray.

18          MR. MURRAY:  We had conversations with regard to

19  contention interrogatories in October, November, December,

20  e-mails and letters.  I don't know how they can say we were

21  sleeping on our rights.

22          Anyway, going to the summary judgment, we want

23  responses to contention interrogatories because they may, in

24  fact, be used in our summary judgment motion because we're

25  asking them to specify what their claim is.  And if they can't

1    or they say they don't have the information, that's an

2    admission we can use on the summary judgment motion.  So I

3    don't know how we can move forward with summary judgment

4    unless we have responses to contention interrogatories.

5              THE COURT:  Does that complete the defendants?

6              MR. ARENSON:  Let me just say something about the

7    30(b)(6) depositions.  And I'll be very brief, Your Honor.

8              THE COURT:  Just for the record, your name.

9              MR. ARENSON:  My name is Greg Arenson for the

10   plaintiffs.  Thank you, Your Honor.

11             THE COURT:  Thank you.

12             MR. ARENSON:  With regard to the OAG Cargo

13   deposition, we set a deadline which is a deposition of May 8th

14   so we could, in fact, have a deadline to work against.  We

15   are, I think, just about to have a stipulation.  We sent a

16   draft over today to OAG's counsel.  I am very hopeful that

17   that will get resolved without a deposition.  On the other

18   hand, if it has to go forward, it will.

19             With regard to one of the other 30(b)(6) depositions

20   that has to do with Defendant Eva, we had a very productive

21   discussion with Eva's counsel on Monday.  He did say that if

22   for some reason we can't manage to work it out, we're working

23   hard on it, then we'll take the deposition on May --

24             THE COURT:  Are they still a defendant?

25             MR. ARENSON:  Yes, Eva is still a defendant.  I

IN RE:  AIR CARGO SHIPPING SERVICES                    26

1   think they have a representative right over here.  The idea

2   is, just again, if you want a document you've got to make sure

3   you get what you can.  And we're trying to work our way

4   through that.  So there is no delay here and I expect things

5   to be resolved by the end of May.

6            MR. KAPLAN:  Robert Kaplan.  Let me just say, in

7   every case I've had, we've always worked out document issues

8   near the end, sometimes on the eve of trial.

9            THE COURT:  Right.

10            MR. KAPLAN:  So this is not unusual that we're

11   negotiating authenticity and issues like that, and we're

12   agreeing on some and not agreeing on others.  I mean, that's

13   no different than any other case.  I've had it a week before

14   trial, working things out like this.  Most of these are going

15   to come into evidence.  We're just trying to see what we can

16   agree to.  That's all.

17            THE COURT:  All right.  May 31st is the deadline for

18   making any motions with respect to discovery that has not been

19   provided.  Is that when you're getting your responses?

20            MS. SINFELT:  It's right on the eve of when we're

21   getting our responses.

22            THE COURT:  I'm going to advance that.  You're going

23   to get responses by May 24th so you have a week to review it.

24   I know you made a deal, but let's make May 31st a nice round

25   date.  I'm going to hold off dealing with the summary judgment

1    deadlines.

2           One thing that I'm not clear about, and that is

3    this, has there been some ruling by Judge Gleeson earlier on

4    that referred to me the question of summary judgment?  Because

5    he has a pre-motion conference requirement.  So I'm reluctant

6    to set any schedule other than a deadline for making an

7    application for a pre-motion conference pursuant to his rules.

8           Maybe I'm forgetting some reference that he made to

9    me long ago.  I don't think he did.

10          MR. KAPLAN:  I think Your Honor is right.  I do not

11   recall any reference for summary judgment.

12          THE COURT:  I did see that you have a proposal for a

13   deadline for filing motions.  I am not at liberty, I don't

14   think, in the absence of a referral from Judge Gleeson.

15          In any event, frankly, if there was, if it was up to

16   me, I'd still have a pre-motion conference on the summary

17   judgment to figure out what the issues were and what the

18   people will make motions on.  That's not for me at this point.

19   I believe that will be up to Judge Gleeson.

20          So I'm going to hold off setting a deadline for

21   sending those pre-motion conference letters.  In the meantime,

22   I will talk to Judge Gleeson myself to see what his preference

23   is with respect to that.  When we get together again, which

24   will be in mid-June or sometime shortly thereafter, I hope

25   that I will have all the briefing necessary to decide the

IN RE:  AIR CARGO SHIPPING SERVICES                28

1  outstanding discovery issues, I will be in a better position

2  to assess the issues about scheduling summary judgment

3  matters.

4          This has been a useful discussion for me because

5  I've learned something about how you're viewing the various

6  issues.  So don't think it was a waste of time because it

7  wasn't, at least not from my standpoint.

8          MR. KAPLAN:  Thank you, Your Honor.

9          THE COURT:  I know that some of the scheduling

10 concerned -- trial scheduling issues and marking documents and

11 exhibits and that sorts of thing.  It really is premature for

12 me to be dealing with that.  That's something that Judge

13 Gleeson may want to weigh in on.  He may well refer it to me,

14 but I have to talk to him about that as well.

15         I'm not really prepared today to talk about that

16 long range scheduling.  I think the most immediate issue is

17 the scheduling of summary judgment motions, when it makes the

18 most sense to do that.

19         And just to give the plaintiffs -- I will be looking

20 to see how this case parallels other cases Judge Gleeson has.

21 And I may well even discuss the matter with Judge Gleeson to

22 see what his view is, how he thinks the summary judgment

23 motion practice should proceed since it does affect him as

24 well.

25         MR. KAPLAN:  Thank you, Your Honor.

1          Did you want the second point?

2          THE COURT:  Unless there's something else to be

3   said, and I don't think there is, we'll move to the next

4   issue.  But I do want you to be aware, May 31, any motions

5   that are necessary with respect to outstanding discovery have

6   to be made, because I do want to put an end on that.

7          MR. SEDRAN:  In terms of the plaintiffs' response,

8   there are going to be multiple motions, and we haven't seen

9   them.  It's a little hard to know exactly how much time we

10  will need.

11         THE COURT:  We're not talking about a great deal of

12  discovery.  Hopefully not.  We're talking about sets of

13  contention interrogatories.

14         Are there that many out there?

15         MR. SEDRAN:  There are multiple defendants.

16         THE COURT:  What were you going to propose?

17         MR. SEDRAN:  We need two weeks.  I was going to say

18  respond by June 16.

19         THE COURT:  That sounds fair.  All right, and I

20  don't need replies.  I'll schedule a hearing for sometime

21  shortly after June 16th.  I will look at my calendar and we'll

22  do that in a few minutes.  Hopefully I'll be able to resolve

23  those issues.

24         May 31, is that a good day?

25         MS. SALZMAN:  That's a Saturday.

1      THE COURT:  Then it'll be June 2nd and June 16th.

2      MR. SEDRAN:  I'll take June 18th.

3      THE COURT:  You want more than two weeks.

4      MR. SEDRAN:  I thought you said the defendants

5  motion is now due June 2.

6      THE COURT:  Two weeks after June 2 is June 16th.

7      MR. SEDRAN:  Okay.

8      THE COURT:  Okay.  Let's move to the next issue.

9  Mr. Kaplan, you said you were prepared to talk on that.

10      MR. KAPLAN:  We have entered into three settlement

11  agreements with Korean Air for $115 million; with Singapore

12  for, I think, 92 or 93 million; and with Cathay for

13  65 million.  We have an agreement in principal, I'm authorized

14  to say with China Air.  I can't disclose the amount yet.

15      THE COURT:  I thought China Air was one --

16      MR. KAPLAN:  Air China.  One is Taiwan and one is

17  Beijing.

18      THE COURT:  I got it.

19      MR. KAPLAN:  So we have received preliminary

20  approval for Korean, Singapore, and Cathay.  We hope to move

21  for preliminary approval with China Air in the next week.

22  Once we get preliminary approval with China Air, we intend to

23  apply to Judge Gleeson to send the notice out for the four

24  settlements, and get final approval.  And, hopefully, that

25  would be on for next fall.

IN RE:  AIR CARGO SHIPPING SERVICES                    31

1          THE COURT:  How many defendants does that leave
2    outstanding?
3          MR. KAPLAN:  I believe seven.
4          THE COURT:  Okay.  The only other thing is the date
5    for the next status conference, right.  That's all we have
6    left.  I have Wednesday afternoon, the 18th.
7          MR. KAPLAN:  I cannot be here, Your Honor.  You can
8    do it without me if other people want to --
9          MR. ARENSON:  I'd rather you be here.
10         THE COURT:  I can also do it Thursday the 19th.
11         MR. KAPLAN:  I'm on a panel in the Amsterdam, a
12   class action panel, Trans Atlantic, on June 18.
13         THE COURT:  Are you going to deal with summary
14   judgment and class certification?
15         Do the plaintiffs feel like they need to have
16   Mr. Kaplan around?
17         MR. SEDRAN:  We'd like to have him.  Is there
18   anything available the following week?
19         THE COURT:  I'm looking right now.  The 26th is a
20   Thursday.  The 26th, I can do that.
21         MR. KAPLAN:  Does that work for Your Honor?
22         THE COURT:  Thursday, June 26th at 2:00.
23         MR. KAPLAN:  Thank you.
24         THE COURT:  Okay.  I'll see you then.
25         MR. SEDRAN:  Thank you, Your Honor.

IN RE:  AIR CARGO SHIPPING SERVICES                    32

1          MR. KAPLAN:  Thank you, Your Honor.

2          MS. SINFELT:  Thank you, Your Honor.

3          MR. ARENSON:  Thank you, Your Honor.

4          MR. WOLKOFF:  Thank you, Your Honor.

5          (Matter concluded at 3:55 p.m.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## $

**$115** [1] - 30:11

## 0

**02199** [1] - 2:2
**06-MD-1775** [1] - 3:16
**06-MD-1775(JG)(VVP**
[1] - 1:3

## 1

**10017** [2] - 2:6, 2:12
**10022** [3] - 1:16, 1:20,
2:16
**1050** [1] - 2:19
**1100** [2] - 2:9, 2:20
**11556** [1] - 2:24
**1350** [1] - 2:9
**1425** [1] - 2:23
**14th** [2] - 1:15, 2:24
**150** [1] - 2:1
**16** [3] - 13:16, 21:1,
29:18
**1625** [1] - 3:1
**16th** [3] - 29:21, 30:1,
30:6
**1720** [1] - 4:14
**18** [1] - 31:12
**18th** [2] - 30:2, 31:6
**19106** [1] - 1:24
**19th** [3] - 20:16, 20:25,
31:10

## 2

**2** [1] - 30:5, 30:6
**20** [1] - 20:24
**20005** [1] - 2:10
**20006-4001** [1] - 3:2
**2003** [1] - 11:18
**20036-5304** [1] - 2:20
**2010** [2] - 12:15, 14:4
**2011** [2] - 21:1, 21:15
**2013** [2] - 16:1, 20:25
**2014** [1] - 1:7
**23** [1] - 1:7
**24th** [1] - 26:23
**26** [1] - 18:21
**26th** [3] - 31:19, 31:20,
31:22
**2:00** [2] - 1:8, 31:22
**2:10** [1] - 3:12
**2nd** [1] - 30:1

## 3

**30** [2] - 20:24, 21:17
**30(b)(6** [10] - 9:1, 9:5,

**9:9**, 19:9, 22:15,
22:18, 22:19, 23:6,
25:7, 25:19
**31** [2] - 29:4, 29:24
**31st** [3] - 16:1, 26:17,
26:24
**3400** [1] - 1:20
**3:55** [1] - 32:5

## 4

**42nd** [1] - 2:6
**450** [1] - 2:12

## 5

**500** [1] - 1:24
**510** [1] - 1:23

## 6

**601** [2] - 1:19, 2:15
**613-2647** [1] - 3:6
**613-2677** [1] - 3:6
**65** [1] - 30:13

## 7

**718** [2] - 3:6, 3:6

## 8

**800** [1] - 2:2
**823(f** [1] - 5:15
**850** [1] - 1:15
**8th** [1] - 25:13

## 9

**92** [1] - 30:12
**93** [1] - 30:12

## A

**able** [4] - 3:25, 9:15,
21:9, 29:22
**absence** [1] - 27:14
**absolutely** [2] - 7:24,
22:2
**accomplished** [1] -
9:3
**accordingly** [1] -
12:24
**action** [1] - 31:12
**add** [2] - 3:22, 17:25
**addition** [2] - 13:2,
13:21
**additional** [1] - 18:23
**address** [2] - 14:9,
15:18

**addressed** [1] - 19:7
**admission** [1] - 25:2
**advance** [1] - 26:22
**affect** [4] - 7:24,
23:16, 23:17, 28:23
**afternoon** [6] - 3:14,
3:18, 4:25, 6:5,
15:23, 31:6
**age** [1] - 22:2
**agenda** [3] - 3:18,
3:19, 3:22
**ago** [2] - 13:22, 27:9
**agree** [2] - 12:7, 26:16
**agreed** [2] - 9:9, 10:4
**agreeing** [1] - 26:12
**agreement** [3] - 16:18,
23:21, 30:13
**agreements** [1] -
30:11
**ahead** [1] - 5:25
**aided** [1] - 3:9
**Air** [19] - 2:1, 2:1, 2:5,
2:5, 2:9, 3:16, 8:3,
13:1, 13:14, 14:1,
14:2, 16:17, 22:10,
30:11, 30:14, 30:15,
30:16, 30:21, 30:22
**AIR** [1] - 1:5
**air** [1] - 2:23
**Airlines** [2] - 2:19, 3:1
**Airways** [1] - 2:15
**allowing** [1] - 19:21
**alone** [1] - 17:5
**amount** [1] - 30:14
**Amsterdam** [1] -
31:11
**analysis** [1] - 18:2
**AND** [1] - 2:11
**ANDREWS** [1] - 2:9
**answer** [7] - 10:25,
12:9, 13:24, 13:25,
14:6, 15:19, 21:18
**answered** [2] - 12:14,
21:3
**answering** [1] - 18:11
**answers** [4] - 12:15,
12:17, 14:6, 18:22
**ANTITRUST** [1] - 1:5
**Antitrust** [3] - 3:16,
4:12, 4:13
**anyway** [2] - 13:19,
24:22
**ANZ** [1] - 16:19
**appeal** [2] - 7:19, 7:20
**appeals** [1] - 5:15
**application** [1] - 27:7
**apply** [5] - 5:6, 5:8,
23:4, 23:22, 30:23
**approach** [1] - 15:3

**appropriate** [2] - 15:3,
21:2
**approval** [4] - 30:20,
30:21, 30:22, 30:24
**approved** [1] - 5:22
**April** [3] - 1:7, 11:18,
16:9
**Arenson** [1] - 25:9
**ARENSON** [7] - 1:17,
25:6, 25:9, 25:12,
25:25, 31:9, 32:3
**arguably** [2] - 17:5,
20:4
**argue** [1] - 24:10
**argued** [3] - 4:18,
4:21, 24:16
**arguing** [1] - 6:15
**argument** [3] - 4:2,
16:25, 21:20
**arguments** [2] - 15:7,
17:11
**Asian** [1] - 5:21
**Asiana** [13] - 3:1, 8:15,
8:18, 9:20, 10:23,
17:5, 18:13, 20:4,
20:9, 20:14, 20:16,
21:6
**asleep** [1] - 20:3
**aspects** [1] - 8:17
**asserted** [1] - 13:18
**assess** [1] - 28:2
**Atlantic** [1] - 31:12
**Atlas** [1] - 2:1
**attention** [1] - 18:21
**attributable** [1] - 22:3
**Australia** [1] - 11:17
**authenticate** [3] -
19:13, 19:22, 19:25
**authentication** [2] -
22:22, 22:24
**authenticity** [1] -
26:11
**authorized** [1] - 30:13
**available** [1] - 31:18
**Avenue** [5] - 1:15,
1:19, 2:12, 2:15,
2:19
**aware** [2] - 15:1, 29:4

## B

**BAKER** [1] - 2:19
**ball** [2] - 18:17, 23:3
**based** [2] - 11:12,
12:11
**basic** [4] - 5:17, 10:24,
12:14, 21:6
**basis** [2] - 12:5, 17:3,
21:9
**BEFORE** [1] - 1:12

**begin** [1] - 11:18
**behalf** [4] - 8:1, 11:3,
12:25, 23:13
**Beijing** [1] - 30:17
**benefit** [1] - 13:8
**BERMAN** [1] - 1:23
**better** [3] - 14:19,
18:11, 28:1
**between** [1] - 22:24
**bigger** [1] - 22:16
**binding** [1] - 10:14
**bit** [1] - 3:19
**Bob** [1] - 12:25
**bona** [1] - 22:1
**Boston** [1] - 2:2
**bought** [1] - 15:12
**Boylston** [1] - 2:2
**brief** [3] - 15:10, 18:3,
25:7
**briefed** [4] - 4:18, 5:5,
5:13, 14:11
**briefing** [4] - 4:22,
18:4, 18:11, 27:25
**briefly** [1] - 24:2
**bring** [2] - 10:17,
22:15
**broad** [1] - 20:6
**Brookhiser** [1] - 12:25
**BROOKHISER** [3] -
2:21, 12:25, 13:11
**Brooklyn** [1] - 1:15
**business** [6] - 11:7,
11:13, 11:14, 11:16,
13:16, 19:14
**busy** [2] - 18:8, 18:9
**buy** [1] - 15:14
**BY** [8] - 1:16, 1:21,
2:7, 2:10, 2:16, 2:21,
2:25, 3:2

## C

**calendar** [1] - 29:21
**cannot** [2] - 22:8, 31:7
**Card** [1] - 4:13
**care** [1] - 6:2
**Cargo** [9] - 2:2, 2:5,
2:19, 3:16, 13:1,
23:3, 23:8, 23:20,
25:12
**CARGO** [1] - 1:5
**carriers** [1] - 5:21
**carved** [1] - 20:11
**case** [27] - 4:17, 7:9,
9:25, 11:9, 12:22,
13:5, 13:12, 14:12,
14:13, 14:14, 14:16,
14:19, 14:21, 14:22,
15:3, 16:4, 17:9,
17:24, 18:4, 18:6,

21:11, 21:25, 22:3, 26:7, 26:13, 28:20
**cases** [2] - 14:21, 28:20
**Cathay** [2] - 30:12, 30:20
**cert** [4] - 9:22, 10:6, 10:9, 10:19
**certain** [2] - 5:5, 5:21
**certainly** [2] - 7:4, 14:23
**certification** [15] - 4:6, 4:17, 5:18, 6:3, 6:22, 7:13, 7:14, 9:24, 10:14, 12:21, 13:6, 13:12, 15:8, 18:1, 31:14
**certifications** [1] - 13:17
**certified** [5] - 6:14, 6:17, 11:9, 13:8, 15:5
**chance** [1] - 16:12
**change** [3] - 5:17, 6:12, 6:14
**changing** [1] - 13:3
**characterized** [1] - 14:3
**charts** [3] - 17:17, 17:21, 17:22
**China** [8] - 2:5, 2:5, 14:1, 30:14, 30:15, 30:16, 30:21, 30:22
**Chris** [1] - 13:14
**CHRISTOPHER** [1] - 2:25
**Circuit** [1] - 10:11
**circumstances** [1] - 20:6
**CIRESI** [1] - 1:19
**cite** [1] - 16:4
**citing** [1] - 20:25
**Civil** [1] - 3:15
**claim** [2] - 13:18, 24:25
**claiming** [4] - 5:6, 5:9, 5:10, 5:11
**claims** [3] - 10:4, 11:25, 14:16
**class** [33] - 4:1, 4:6, 4:17, 4:21, 4:24, 5:18, 6:3, 6:14, 6:16, 6:21, 7:1, 7:13, 9:22, 9:23, 10:6, 10:9, 10:13, 10:14, 10:15, 10:19, 11:9, 12:21, 13:6, 13:8, 13:17, 15:5, 15:8, 18:1, 18:3, 31:12, 31:14
**clear** [2] - 10:11, 27:2

**clearly** [2] - 6:13, 22:14
**CLERK** [1] - 3:15
**client** [1] - 13:17
**close** [6] - 7:23, 19:16, 20:1, 21:4, 21:5, 21:16
**closed** [1] - 12:10
**colleagues** [1] - 8:2
**commerce** [1] - 10:5
**communications** [2] - 17:13, 17:23
**compel** [10] - 8:10, 10:24, 12:18, 15:21, 16:5, 17:8, 19:4, 20:19, 22:11, 24:7
**complete** [1] - 25:5
**completed** [1] - 13:25
**completely** [1] - 4:18
**complex** [1] - 12:20
**compromise** [1] - 22:13
**compulsion** [1] - 5:10
**Computer** [1] - 3:9
**Computer-aided** [1] - 3:9
**computerized** [1] - 3:8
**concerned** [1] - 28:10
**concluded** [1] - 32:5
**confer** [1] - 10:20
**conference** [6] - 3:15, 27:5, 27:7, 27:16, 27:21, 31:5
**CONFERENCE** [1] - 1:11
**confers** [1] - 14:5
**confidential** [1] - 16:18
**Connecticut** [1] - 2:19
**connection** [1] - 21:4
**conspiracy** [6] - 5:4, 5:19, 6:16, 11:16, 11:19, 21:13
**conspirator** [1] - 21:12
**conspired** [1] - 21:7
**consume** [1] - 11:23
**consuming** [1] - 12:4
**contention** [12] - 8:3, 8:16, 8:22, 12:7, 14:4, 18:7, 18:12, 21:3, 24:19, 24:23, 25:4, 29:13
**contentious** [1] - 13:23
**context** [1] - 6:25
**continue** [2] - 11:24, 11:25
**conversations** [1] - 24:18

**convinced** [1] - 15:3
**corporations** [1] - 21:7
**counsel** [3] - 6:7, 25:16, 25:21
**country** [1] - 11:19
**couple** [2] - 14:4, 21:20
**course** [2] - 17:16, 18:24
**COURT** [68] - 1:1, 3:13, 3:18, 4:16, 5:7, 5:23, 6:1, 6:6, 6:21, 7:7, 7:12, 7:19, 7:25, 8:16, 8:21, 9:5, 9:16, 9:18, 13:10, 13:19, 14:7, 14:12, 14:18, 15:19, 16:10, 16:21, 19:7, 19:18, 20:11, 20:17, 21:17, 21:24, 22:5, 22:18, 23:6, 23:12, 23:16, 23:24, 24:1, 24:5, 24:13, 24:17, 25:5, 25:8, 25:11, 25:24, 26:9, 26:17, 26:22, 27:12, 28:9, 29:2, 29:11, 29:16, 29:19, 30:1, 30:3, 30:6, 30:8, 30:15, 30:18, 31:1, 31:4, 31:10, 31:13, 31:19, 31:22, 31:24
**court** [3] - 12:4, 14:24, 14:25
**Court** [15] - 3:5, 3:5, 9:23, 10:5, 10:6, 10:10, 10:21, 11:24, 16:13, 16:24, 17:11, 18:5, 19:4, 19:17, 22:15
**Court's** [3] - 16:6, 19:20, 19:25
**Courthouse** [1] - 1:5
**courthouse** [1] - 4:12
**create** [1] - 6:20
**credible** [1] - 16:25
**CRR** [1] - 3:5
**crystal** [1] - 23:3

# D

**D.C** [1] - 3:2
**date** [4] - 10:25, 14:6, 26:25, 31:4
**dates** [1] - 17:14
**Daubert** [3] - 4:20, 4:23, 4:25
**DC** [2] - 2:10, 2:20
**deadline** [13] - 9:2, 15:20, 15:25, 18:19,

19:12, 19:16, 19:17, 25:13, 25:14, 26:17, 27:6, 27:13, 27:20
**deadlines** [1] - 27:1
**deal** [5] - 3:25, 16:23, 26:24, 29:11, 31:13
**dealing** [3] - 10:12, 26:25, 28:12
**dealt** [1] - 10:19
**December** [6] - 8:4, 15:25, 16:6, 16:7, 20:25, 24:19
**decide** [4] - 5:18, 11:12, 12:23, 27:25
**decided** [1] - 10:12
**decision** [7] - 4:5, 6:3, 7:18, 9:22, 10:9, 10:19, 13:6
**decisions** [1] - 12:24
**declaration** [3] - 9:11, 9:14, 23:22
**declarations** [1] - 23:15
**decline** [1] - 24:8
**defendant** [10] - 6:8, 8:25, 15:12, 15:14, 16:2, 16:3, 16:16, 25:24, 25:25
**Defendant** [2] - 5:19, 25:20
**defendant's** [2] - 4:2, 9:19
**defendants** [31] - 6:4, 6:13, 7:3, 7:9, 7:16, 8:13, 8:24, 9:1, 10:18, 13:21, 14:15, 15:4, 15:7, 16:2, 16:8, 17:6, 17:11, 17:19, 17:22, 18:9, 18:15, 19:2, 21:6, 21:22, 22:3, 22:7, 23:14, 25:5, 29:15, 30:4, 31:1
**Defendants** [1] - 5:3
**defenses** [2] - 5:5, 12:1
**defer** [2] - 8:2, 8:15
**delay** [2] - 19:23, 26:4
**delayed** [1] - 19:21
**denied** [3] - 6:22, 10:6, 13:17
**deny** [2] - 9:23, 9:25
**deposition** [9] - 9:14, 19:20, 19:24, 23:6, 23:23, 25:13, 25:17, 25:23
**depositions** [10] - 9:1, 9:6, 9:9, 18:25, 19:9, 19:13, 22:18, 22:19, 25:7, 25:19

**desire** [1] - 22:1
**DICKER** [1] - 2:5
**differences** [1] - 16:18
**different** [8] - 5:11, 11:9, 12:1, 14:15, 15:6, 15:7, 26:13
**difficult** [1] - 22:24
**directly** [1] - 6:2
**disagree** [1] - 24:15
**disagrees** [1] - 14:10
**disclose** [1] - 30:14
**disclosed** [1] - 18:24
**Discount** [1] - 4:13
**discover** [1] - 8:17
**discovery** [36] - 7:22, 12:5, 12:10, 12:11, 12:16, 13:2, 13:24, 14:5, 15:20, 15:25, 16:1, 16:4, 16:7, 17:7, 17:10, 17:17, 17:18, 17:22, 17:24, 18:8, 18:12, 18:19, 18:24, 19:2, 19:11, 19:16, 19:21, 20:2, 20:5, 21:4, 21:16, 22:9, 26:18, 28:1, 29:5, 29:12
**discuss** [1] - 28:21
**discussion** [3] - 17:6, 25:21, 28:4
**discussions** [2] - 16:11, 18:13
**disingenuous** [1] - 23:2
**DISTRICT** [2] - 1:1, 1:1
**document** [6] - 8:25, 9:6, 17:13, 19:9, 26:2, 26:7
**documents** [6] - 19:13, 19:14, 19:22, 19:25, 22:23, 28:10
**done** [5] - 18:16, 18:19, 23:4, 23:12
**down** [3] - 4:7, 10:20, 23:19
**draft** [1] - 25:16
**draw** [1] - 18:21
**due** [2] - 13:4, 30:5

# E

**e-mails** [1] - 24:20
**early** [1] - 17:11
**East** [2] - 2:6, 2:24
**EASTERN** [1] - 1:1
**easy** [1] - 15:19
**EDELMAN** [1] - 2:5
**effected** [1] - 6:3
**efficient** [1] - 10:16
**eight** [1] - 21:25

**either** [1] - 23:2
**ELLIS** [1] - 2:15
**ELSER** [1] - 2:5
**end** [13] - 8:6, 9:2, 9:10, 16:7, 16:9, 16:19, 19:11, 20:4, 20:21, 23:5, 26:5, 26:8, 29:6
**ending** [1] - 11:18
**entered** [1] - 30:10
**entirely** [1] - 12:1
**entirety** [1] - 9:24
**entitled** [1] - 20:5
**ESQ** [2] - 1:16, 1:17
**Eva** [3] - 23:10, 25:20, 25:25
**EVA** [1] - 2:15
**Eva's** [1] - 25:21
**eve** [2] - 26:8, 26:20
**event** [2] - 3:20, 27:15
**evidence** [2] - 5:20, 26:15
**ex** [1] - 9:24
**ex-U.S** [1] - 9:24
**exactly** [1] - 29:9
**example** [2] - 9:21, 9:23
**except** [1] - 20:4
**exchange** [1] - 20:7
**exhibits** [1] - 28:11
**expansive** [1] - 11:20
**expect** [2] - 8:6, 26:4
**expert** [1] - 12:5
**explain** [1] - 19:4
**extend** [1] - 19:17
**extension** [3] - 9:4, 9:10, 23:5
**extensions** [1] - 23:22
**extensive** [4] - 17:10, 18:1, 18:4, 20:7
**extent** [1] - 4:6
**extra** [1] - 10:3
**extraordinary** [1] - 20:7
**Eye** [1] - 3:1

## F

**Facsimile** [1] - 3:6
**fact** [12] - 11:5, 12:10, 12:11, 12:16, 14:5, 15:25, 16:1, 19:16, 20:2, 24:15, 24:24, 25:14
**factor** [1] - 18:1
**facts** [2] - 5:20, 19:1
**factual** [1] - 13:24
**fair** [1] - 29:19
**fall** [1] - 30:25
**FALTISCHEK** [1] -

2:23
**fault** [1] - 22:5
**favor** [1] - 20:21
**Fee** [1] - 4:13
**few** [2] - 23:23, 29:22
**fide** [1] - 22:1
**figure** [1] - 10:20, 27:17
**file** [4] - 7:5, 11:11, 19:3, 22:11
**filed** [5] - 5:6, 5:8, 8:3, 16:6, 19:16
**filing** [1] - 27:13
**filled** [1] - 17:20
**final** [2] - 7:18, 30:24
**fine** [1] - 24:12
**finished** [2] - 12:15, 16:1
**first** [1] - 16:6
**FISCHMAN** [1] - 2:11
**FISHBEIN** [1] - 1:23
**five** [3] - 8:20, 11:7
**Floor** [2] - 1:15, 2:24
**fluff** [1] - 14:9
**follow** [1] - 3:21
**following** [1] - 31:18
**footnote** [1] - 20:15
**forgetting** [1] - 27:8
**form** [1] - 7:1
**formal** [1] - 17:18
**format** [1] - 6:25
**forward** [17] - 3:23, 6:18, 7:9, 7:15, 7:17, 8:11, 12:4, 16:2, 18:17, 19:6, 21:21, 21:22, 21:25, 22:8, 25:3, 25:18
**foundation** [1] - 19:14
**four** [5] - 8:13, 8:20, 8:23, 8:25, 30:23
**FOX** [1] - 1:14
**frankly** [2] - 11:14, 27:15
**Friendly** [1] - 21:12
**front** [1] - 22:15
**fully** [1] - 15:10
**fundamentally** [1] - 11:5
**future** [1] - 24:16

## G

**generally** [1] - 8:1
**gentlemen** [1] - 20:17
**George** [1] - 14:1
**GEORGE** [1] - 2:7
**Gleeson** [13] - 4:15, 4:25, 5:15, 14:10, 14:25, 27:3, 27:14, 27:19, 27:22, 28:13,

28:20, 28:21, 30:23
**global** [1] - 11:19
**granted** [1] - 4:7
**GRAY** [1] - 2:1
**great** [1] - 29:11
**Greg** [1] - 25:9
**GREGORY** [1] - 1:17
**guess** [1] - 24:7
**guilty** [1] - 11:16
**guys** [1] - 20:11

## H

**half** [3] - 11:7, 11:10, 13:22
**HAMMACK** [1] - 3:3
**hand** [1] - 25:18
**happy** [1] - 16:24
**hard** [4] - 4:5, 25:23, 29:9
**HARTMANN** [1] - 2:25
**Harvey** [1] - 11:3
**HARVEY** [1] - 2:3
**hashed** [1] - 20:18
**hear** [3] - 6:4, 20:14, 24:3
**heard** [4] - 9:18, 14:8, 16:7, 18:17
**hearing** [4] - 4:23, 18:2, 18:5, 29:20
**held** [1] - 23:20
**herring** [1] - 15:13
**hit** [1] - 21:17
**hold** [5] - 21:14, 23:2, 23:19, 26:25, 27:20
**Holdings** [1] - 2:17
**HOLLIS** [1] - 1:21
**Honor** [43] - 4:10, 6:5, 6:12, 6:24, 7:11, 7:16, 7:21, 8:23, 9:8, 11:3, 11:6, 11:15, 12:2, 12:3, 12:6, 12:20, 12:23, 15:16, 15:23, 18:7, 18:15, 18:21, 19:3, 19:10, 20:9, 22:21, 23:13, 23:18, 23:25, 24:2, 24:12, 25:7, 25:10, 27:10, 28:8, 28:25, 31:7, 31:21, 31:25, 32:1, 32:2, 32:3, 32:4
**HONORABLE** [1] - 1:12
**hope** [2] - 27:24, 30:20
**hopeful** [1] - 25:16
**hopefully** [3] - 29:12, 29:22, 30:24
**HOSTETLER** [1] -

2:19
**HOWARD** [1] - 1:25
**Howard** [1] - 15:23

## I

**IAN** [1] - 3:2
**Ian** [2] - 9:20, 20:9
**idea** [1] - 26:1
**identify** [1] - 17:14
**identifying** [1] - 17:23
**III** [1] - 2:7
**immediate** [1] - 28:16
**immunity** [1] - 5:10
**impact** [1] - 4:8
**impasse** [2] - 10:24, 17:8
**important** [3] - 6:10, 22:14, 22:22
**impression** [2] - 16:11, 16:14
**IN** [1] - 1:5
**inanimate** [1] - 21:7
**inbound** [4] - 9:25, 10:4, 10:7, 11:8
**Inc** [2] - 2:2, 3:1
**indefinitely** [1] - 7:11
**India** [3] - 2:23, 13:14, 14:2
**indication** [1] - 13:16
**individual** [1] - 7:2
**information** [12] - 8:12, 8:14, 11:1, 16:19, 16:22, 17:12, 17:18, 17:21, 18:23, 20:7, 20:22, 25:1
**informed** [1] - 9:13
**initial** [1] - 22:13
**intend** [1] - 30:22
**Interchange** [5] - 4:12, 4:13, 14:10, 15:4, 15:17
**interest** [1] - 23:21
**interrogatories** [26] - 8:16, 8:19, 8:20, 8:22, 8:24, 9:7, 10:24, 12:6, 12:7, 12:10, 12:12, 12:14, 12:17, 13:22, 13:23, 14:3, 14:4, 14:9, 15:18, 18:23, 19:8, 21:3, 24:19, 24:23, 25:4, 29:13
**interrogatory** [1] - 8:3
**interrupt** [1] - 16:21
**involving** [2] - 11:16, 16:13
**issue** [15] - 3:24, 6:9, 7:8, 13:5, 14:20, 16:12, 16:23, 18:19,

22:12, 22:16, 22:23, 22:25, 28:16, 29:4, 30:8
**issues** [22] - 5:3, 5:17, 5:20, 6:12, 6:13, 7:22, 9:11, 13:3, 14:13, 16:13, 22:9, 22:14, 22:16, 23:19, 26:7, 26:11, 27:17, 28:1, 28:2, 28:6, 28:12
**it'll** [2] - 3:19, 30:1

## J

**James** [1] - 4:14
**JENNIFER** [1] - 2:25
**joint** [2] - 15:13, 21:11
**jointly** [1] - 21:15
**JOYCE** [1] - 2:16
**JUDGE** [1] - 1:12
**Judge** [18] - 4:14, 4:15, 4:21, 4:24, 5:1, 5:15, 14:8, 14:10, 14:25, 21:12, 27:3, 27:14, 27:19, 27:22, 28:12, 28:20, 28:21, 30:23
**judge** [1] - 14:25
**judgment** [42] - 3:25, 4:19, 4:22, 4:24, 6:11, 7:15, 7:18, 7:24, 8:12, 9:22, 10:3, 10:8, 10:11, 10:13, 11:1, 11:11, 13:3, 13:7, 13:8, 13:9, 13:13, 14:11, 14:24, 15:10, 15:11, 17:3, 18:11, 23:16, 23:18, 24:22, 24:24, 25:2, 25:3, 26:25, 27:4, 27:11, 27:17, 28:2, 28:17, 28:22, 31:14
**June** [11] - 27:24, 29:18, 29:21, 30:1, 30:2, 30:5, 30:6, 31:12, 31:22
**jurisdiction** [1] - 10:5

## K

**Kaplan** [5] - 4:10, 14:7, 26:6, 30:9, 31:16
**KAPLAN** [25] - 1:14, 1:16, 1:19, 4:10, 4:17, 5:8, 5:24, 14:8, 14:17, 15:4, 23:25, 26:6, 26:10, 27:10,

28:8, 28:25, 30:10, 30:16, 30:19, 31:3, 31:7, 31:11, 31:21, 31:23, 32:1
**KILSHEIMER** [1] - 1:14
**kind** [9] - 4:4, 4:5, 8:8, 11:13, 11:25, 13:12, 13:18, 14:20, 20:15
**KIRKLAND** [1] - 2:15
**knowing** [1] - 9:21
**knows** [3] - 6:25, 7:2, 7:6
**Korean** [2] - 30:11, 30:20
**KURTH** [1] - 2:9

## L

**laid** [2] - 18:3, 18:6
**Landau** [1] - 18:5
**law** [1] - 16:4
**LAW** [1] - 3:15
**lay** [1] - 19:13
**learned** [3] - 17:18, 17:21, 28:5
**least** [5] - 4:3, 9:6, 23:1, 23:9, 28:7
**leave** [1] - 31:1
**left** [3] - 7:2, 7:3, 31:6
**letter** [3] - 10:10, 10:19, 21:1
**letters** [2] - 24:20, 27:21
**IEVIN** [1] - 1:23
**Lexington** [3] - 1:19, 2:12, 2:15
**liability** [2] - 15:14, 21:11
**liable** [1] - 21:15
**liaison** [1] - 6:7
**liberty** [1] - 27:13
**light** [2] - 17:9, 20:7
**likewise** [1] - 13:21
**Limited** [1] - 2:5
**limited** [1] - 11:17
**line** [3] - 4:7, 14:21, 23:19
**lines** [1] - 14:14
**LITIGATION** [1] - 1:5
**Litigation** [3] - 3:17, 4:12, 4:14
**litigation** [2] - 7:3, 7:4
**litigations** [1] - 7:2
**live** [4] - 9:11, 9:14, 22:25, 23:23
**LLP** [8] - 1:14, 1:19, 2:1, 2:5, 2:9, 2:15, 2:19, 3:1
**location** [1] - 17:15

**look** [2] - 17:20, 29:21
**looking** [3] - 17:12, 28:19, 31:19
**Ltd** [1] - 2:9
**LYNNE** [1] - 2:11

## M

**MA** [1] - 2:2
**Magistrate** [3] - 4:14, 4:21, 5:1
**MAGISTRATE** [1] - 1:12
**mails** [1] - 24:20
**manage** [1] - 25:22
**March** [1] - 23:4
**marking** [1] - 28:10
**matter** [4] - 15:22, 17:15, 28:21, 32:5
**matters** [2] - 11:22, 28:3
**MDL** [1] - 4:14
**mean** [6] - 5:2, 6:14, 7:19, 14:25, 15:1, 26:12
**meantime** [1] - 27:21
**meanwhile** [1] - 5:16
**Meena** [2] - 6:7, 21:19
**MEENA** [1] - 2:10
**meet** [2] - 10:20, 14:5
**meetings** [2] - 17:13, 17:23
**member** [1] - 5:19
**members** [1] - 5:4
**Merchant** [1] - 4:13
**merchants** [1] - 15:6
**merit** [1] - 4:3
**mid** [1] - 27:24
**mid-June** [1] - 27:24
**middle** [1] - 8:4
**might** [2] - 4:7, 19:12
**MILLER** [1] - 1:19
**million** [3] - 30:11, 30:12, 30:13
**minutes** [1] - 29:22
**modify** [1] - 16:2
**moment** [1] - 16:21
**Monday** [1] - 25:21
**month** [1] - 10:2
**months** [4] - 7:6, 18:17, 22:12
**moreover** [1] - 16:3
**MOSCOU** [1] - 2:23
**MOSKOWITZ** [1] - 2:5
**most** [5] - 6:9, 9:10, 26:14, 28:10, 28:24
**motion** [24] - 4:1, 4:6, 4:18, 4:20, 4:21, 4:24, 6:10, 6:11, 8:10, 11:11, 13:7,

13:8, 16:5, 17:11, 22:11, 24:7, 24:24, 25:2, 27:5, 27:7, 27:16, 27:21, 28:23, 30:5
**motions** [25] - 3:25, 4:4, 4:7, 4:8, 4:20, 6:19, 6:22, 7:5, 7:15, 7:18, 7:24, 10:17, 13:4, 15:21, 16:5, 20:18, 20:20, 24:8, 26:18, 27:13, 27:18, 28:17, 29:4, 29:8
**move** [17] - 8:11, 9:21, 12:17, 17:3, 17:8, 18:16, 19:3, 19:6, 19:21, 21:22, 21:25, 22:8, 25:3, 29:3, 30:8, 30:20
**moved** [2] - 19:16, 20:1
**moving** [4] - 7:9, 7:17, 10:3, 10:23
**MR** [55] - 4:10, 4:17, 5:8, 5:24, 9:20, 11:3, 12:25, 13:11, 13:14, 13:20, 14:1, 14:8, 14:17, 15:4, 15:23, 16:16, 17:2, 19:10, 19:19, 20:9, 20:13, 20:24, 21:18, 23:25, 24:2, 24:12, 24:14, 24:18, 25:6, 25:9, 25:12, 25:25, 26:6, 26:10, 27:10, 28:8, 28:25, 29:7, 29:15, 29:17, 30:2, 30:4, 30:7, 30:10, 30:16, 30:19, 31:3, 31:7, 31:11, 31:17, 31:21, 31:23, 31:25, 32:1
**MS** [21] - 6:5, 6:7, 6:24, 7:8, 7:16, 7:20, 8:1, 8:19, 8:23, 9:8, 9:17, 21:19, 22:2, 22:7, 22:21, 23:8, 23:13, 23:17, 26:20, 29:25, 32:2
**multiple** [2] - 29:8, 29:15
**Murray** [2] - 13:14, 24:17
**MURRAY** [4] - 2:25, 13:14, 13:20, 24:18
**MYERS** [1] - 3:1

## N

**N.W** [1] - 3:1

**name** [4] - 6:6, 12:8, 25:8, 25:9
**named** [1] - 11:6
**narrow** [1] - 11:16
**near** [1] - 26:8
**necessary** [6] - 10:6, 11:1, 18:3, 18:8, 27:25, 29:5
**need** [15] - 17:20, 18:22, 19:12, 20:22, 21:3, 21:21, 21:22, 21:25, 22:11, 22:15, 24:5, 29:10, 29:17, 29:20, 31:15
**needed** [2] - 9:12, 16:5
**needs** [1] - 15:22
**negotiating** [1] - 26:11
**negotiations** [1] - 23:15
**never** [1] - 6:23
**NEW** [1] - 1:1
**New** [16] - 5:1, 1:16, 1:20, 2:6, 2:9, 2:12, 2:16, 2:24, 8:3, 16:17, 22:10
**next** [5] - 29:3, 30:8, 30:21, 30:25, 31:5
**nice** [2] - 20:14, 26:24
**Nippon** [1] - 12:25
**nippon** [1] - 2:19
**non** [1] - 23:1
**non-party** [1] - 23:1
**nonparty** [5] - 9:16, 9:17, 19:22, 23:9, 23:20
**normal** [1] - 13:11
**note** [1] - 24:14
**noted** [1] - 3:12
**nothing** [3] - 18:16, 19:5, 19:23
**notice** [1] - 30:23
**notion** [2] - 6:1, 14:23
**notwithstanding** [1] - 4:1
**November** [1] - 24:19
**number** [1] - 10:8
**NW** [2] - 2:9, 2:19

## O

**O'MELVENY** [1] - 3:1
**OAG** [5] - 19:22, 23:3, 23:8, 23:20, 25:12
**OAG's** [1] - 25:16
**objection** [1] - 5:14
**objections** [2] - 8:4, 13:23
**obviously** [3] - 6:15, 8:10, 9:14

**October** [1] - 24:19
**OF** [2] - 1:1, 1:11
**Official** [1] - 3:5
**old** [1] - 21:25
**once** [4] - 7:13, 10:12, 20:21, 30:22
**one** [22] - 4:10, 8:24, 9:6, 9:21, 9:22, 10:13, 11:8, 12:8, 15:12, 17:10, 17:25, 19:19, 19:23, 19:24, 23:1, 23:6, 23:8, 25:19, 27:2, 30:15, 30:16
**ones** [2] - 5:11, 7:25
**open** [7] - 8:17, 9:1, 9:6, 15:20, 19:2, 19:8, 22:20
**opening** [1] - 18:3
**opposing** [1] - 15:5
**opt** [1] - 13:9
**order** [4] - 13:11, 16:3, 19:20, 19:25
**Orenstein** [3] - 4:15, 4:21, 5:1
**otherwise** [1] - 18:24
**ourselves** [1] - 21:13
**outbound** [1] - 11:8
**outside** [2] - 5:9, 17:21
**outstanding** [9] - 7:22, 8:20, 8:24, 12:12, 13:2, 17:7, 28:1, 29:5, 31:2
**own** [1] - 21:13

## P

**p.m** [3] - 1:8, 3:12, 32:5
**PA** [1] - 1:24
**panel** [2] - 31:11, 31:12
**papers** [3] - 4:11, 19:3, 19:16
**parallels** [1] - 28:20
**part** [4] - 6:16, 11:23, 16:6, 17:18
**partial** [2] - 6:11, 6:19
**participants** [1] - 17:15
**particularly** [1] - 6:14
**parties** [11] - 4:3, 9:4, 9:9, 10:20, 11:24, 12:3, 16:17, 19:12, 19:15, 20:11, 22:20
**party** [5] - 9:13, 16:3, 18:22, 19:21, 23:1
**patiently** [1] - 12:23
**Payment** [1] - 4:13

**pending** [4] - 4:1, 4:19, 4:24, 22:8
**people** [5] - 13:9, 20:19, 21:14, 27:18, 31:8
**perceived** [1] - 20:14
**period** [3] - 10:2, 11:18, 11:20
**petition** [1] - 5:15
**Philadelphia** [1] - 1:24
**picture** [1] - 12:1
**piecemeal** [3] - 6:10, 6:18, 15:10
**plaintiff** [1] - 23:22
**plaintiff's** [1] - 21:20
**Plaintiffs** [3] - 1:14, 1:19, 3:23
**plaintiffs** [21] - 3:24, 8:5, 10:23, 11:6, 11:10, 11:13, 11:20, 12:9, 12:19, 13:16, 13:19, 13:20, 14:3, 15:12, 17:16, 18:13, 23:15, 24:9, 25:10, 28:19, 31:15
**plaintiffs'** [1] - 29:7
**Plaintiffs'** [1] - 21:2
**play** [1] - 16:22
**Plaza** [1] - 2:23
**plead** [1] - 11:15
**POHORELSKY** [1] - 1:12
**point** [8] - 7:4, 7:21, 9:4, 10:2, 15:11, 24:16, 27:18, 29:1
**points** [1] - 21:20
**Polar** [8] - 2:1, 11:4, 11:6, 11:10, 11:14, 11:15, 13:15, 24:3
**pop** [1] - 19:24
**position** [11] - 5:24, 7:17, 14:2, 17:9, 17:25, 21:2, 22:9, 24:6, 24:7, 24:10, 28:1
**possibility** [2] - 13:3, 15:1
**possibly** [1] - 23:10
**postpone** [1] - 16:23
**potential** [1] - 8:9
**PowerPoint** [1] - 18:5
**practice** [3] - 7:15, 16:5, 28:23
**pre** [4] - 27:5, 27:7, 27:16, 27:21
**pre-motion** [4] - 27:5, 27:7, 27:16, 27:21
**precede** [1] - 13:6
**precedent** [4] - 4:11, 5:2, 14:23, 15:15

**preference** [1] - 27:22
**preliminary** [3] - 30:19, 30:21, 30:22
**premature** [2] - 12:19, 28:11
**prepare** [1] - 15:17
**prepared** [2] - 28:15, 30:9
**present** [2] - 13:19, 13:20
**presentation** [1] - 18:6
**presented** [1] - 10:10
**pretrial** [1] - 21:4
**pretty** [1] - 10:11
**prevail** [1] - 13:7
**prevent** [1] - 20:20
**principal** [1] - 30:13
**principle** [1] - 3:24
**problem** [2] - 16:4, 18:18
**procedurally** [1] - 14:22
**proceed** [4] - 11:2, 12:22, 14:24, 28:23
**Proceedings** [1] - 3:8
**process** [1] - 13:5
**produced** [1] - 3:9
**productive** [1] - 25:20
**proper** [2] - 7:10, 11:2
**proposal** [1] - 27:12
**propose** [1] - 29:16
**provide** [2] - 17:12, 19:15
**provided** [2] - 17:17, 26:19
**Prudential** [1] - 2:1
**purpose** [2] - 19:18, 19:19
**pursuant** [1] - 27:7
**push** [1] - 6:18
**put** [6] - 4:3, 10:10, 10:18, 12:8, 20:13, 29:6

**Q**

**quick** [1] - 21:20
**quite** [1] - 22:16
**quote** [3] - 13:4, 21:2, 21:5
**quoting** [1] - 21:1

**R**

**raise** [1] - 18:18
**range** [1] - 28:16
**rate** [2] - 5:6, 5:8
**rates** [1] - 5:22
**rather** [1] - 31:9

**Re** [2] - 3:16, 4:12
**RE** [1] - 1:5
**ready** [1] - 12:13
**realized** [1] - 19:12
**really** [6] - 6:19, 6:20, 7:8, 21:8, 28:11, 28:15
**reason** [5] - 5:12, 13:5, 21:21, 24:10, 25:22
**reasons** [1] - 10:13
**receive** [1] - 8:6
**received** [3] - 3:18, 8:4, 30:19
**receiving** [1] - 8:9
**recently** [1] - 9:12
**reciprocated** [1] - 17:17
**recollect** [1] - 11:15
**recommendation** [3] - 5:14, 7:13, 10:18
**record** [4] - 20:14, 20:23, 24:14, 25:8
**recorded** [1] - 3:8
**records** [1] - 19:14
**red** [1] - 15:13
**refer** [1] - 28:13
**reference** [2] - 27:8, 27:11
**referral** [1] - 27:14
**referred** [1] - 27:4
**regard** [6] - 11:10, 11:19, 11:24, 24:18, 25:12, 25:19
**regardless** [1] - 20:19
**rejoinder** [1] - 24:3
**relation** [1] - 14:15
**reluctant** [1] - 27:5
**remain** [1] - 8:17
**remaining** [1] - 23:10
**remember** [3] - 9:25, 17:10, 24:11
**replies** [1] - 29:20
**report** [2] - 5:14, 7:13
**Reporter** [2] - 3:5, 3:5
**representative** [1] - 26:1
**request** [2] - 8:25, 17:7
**requests** [2] - 9:6, 19:9
**required** [1] - 17:11
**requirement** [1] - 27:5
**resolution** [1] - 22:1
**resolve** [5] - 13:12, 16:12, 16:13, 17:1, 29:22
**resolved** [7] - 7:23, 16:17, 18:15, 22:6,

25:17, 26:5
**respect** [6] - 9:8, 16:17, 17:5, 26:18, 27:23, 29:5
**respond** [3] - 16:16, 20:10, 29:18
**response** [2] - 22:13, 29:7
**responses** [9] - 8:5, 8:6, 8:8, 16:24, 24:23, 25:4, 26:19, 26:21, 26:23
**result** [1] - 14:5
**review** [1] - 26:23
**rightfully** [1] - 24:10
**rights** [7] - 16:8, 18:16, 19:5, 20:4, 20:15, 24:4, 24:21
**rigorous** [1] - 18:2
**RMR** [1] - 3:5
**ROBERT** [2] - 1:16, 2:21
**Robert** [2] - 4:10, 26:6
**ROBINS** [1] - 1:19
**RONALD** [1] - 3:5
**ronald_tolkin@nyed .uscourts.gov** [1] - 3:7
**ROPES** [1] - 2:1
**round** [1] - 26:24
**routes** [4] - 9:25, 10:1, 10:7
**RPR** [1] - 3:5
**Rule** [2] - 18:21, 19:9
**ruled** [1] - 10:14
**rules** [2] - 19:15, 27:7
**ruling** [4] - 10:15, 10:17, 20:21, 27:3
**rush** [1] - 10:25
**RUSKIN** [1] - 2:23
**RXR** [1] - 2:23

**S**

**SALZMAN** [2] - 1:21, 29:25
**Saturday** [1] - 29:25
**schedule** [5] - 4:19, 16:7, 23:2, 27:6, 29:20
**scheduled** [1] - 9:2
**scheduling** [7] - 3:23, 16:3, 28:2, 28:9, 28:10, 28:16, 28:17
**scope** [1] - 10:9
**SCOTT** [1] - 3:3
**seated** [1] - 3:13
**Second** [1] - 10:11
**second** [2] - 13:3, 29:1

**seconds** [3] - 20:24, 20:25, 21:17
**Sedran** [10] - 14:9, 15:18, 15:24, 20:16, 22:9, 22:16, 23:1, 23:18, 24:3, 24:15
**SEDRAN** [15] - 1:23, 1:25, 15:23, 16:16, 17:2, 19:10, 19:19, 29:7, 29:15, 29:17, 30:2, 30:4, 30:7, 31:17, 31:25
**Sedran's** [1] - 20:21
**see** [7] - 13:12, 26:15, 27:12, 27:22, 28:20, 28:22, 31:24
**seek** [1] - 16:2
**seem** [2] - 4:1, 4:7
**send** [1] - 30:23
**sending** [3] - 10:22, 10:23, 27:21
**sense** [6] - 4:4, 6:19, 7:5, 14:18, 15:15, 26:18
**sent** [1] - 25:15
**separate** [3] - 4:20, 4:23, 8:22
**September** [1] - 20:16
**serious** [1] - 7:22
**served** [7] - 12:14, 13:22, 14:3, 17:19, 17:22, 21:6, 21:10
**Service** [1] - 3:16
**SERVICES** [1] - 1:5
**set** [4] - 9:6, 15:20, 25:13, 27:6
**sets** [1] - 29:12
**setting** [1] - 27:20
**settlement** [1] - 30:10
**settlements** [1] - 30:24
**seven** [1] - 31:3
**several** [2] - 15:13, 21:11
**severally** [1] - 21:15
**shape** [1] - 4:7
**SHIPPING** [1] - 1:5
**Shipping** [1] - 3:16
**short** [1] - 3:19
**shortly** [2] - 27:24, 29:21
**side** [1] - 9:19
**sides** [1] - 18:25
**similar** [2] - 13:15, 14:2
**SIMMONS** [6] - 3:2, 9:20, 20:9, 20:13, 20:24, 21:18
**Simmons** [2] - 9:20, 20:9

**Sinfelt** [2] - 6:7, 21:19
**SINFELT** [21] - 2:10,
6:5, 6:7, 6:24, 7:8,
7:16, 7:20, 8:1, 8:19,
8:23, 9:8, 9:17,
21:19, 22:2, 22:7,
22:21, 23:8, 23:13,
23:17, 26:20, 32:2
**Singapore** [2] - 30:11,
30:20
**sitting** [2] - 5:16, 22:3
**six** [3] - 7:6, 10:2, 11:6
**six-month** [1] - 10:2
**sleep** [1] - 24:3
**sleeping** [3] - 16:8,
20:15, 24:21
**slept** [2] - 18:16, 19:4
**sometime** [3] - 21:3,
27:24, 29:20
**sometimes** [1] - 26:8
**soon** [2] - 12:16, 24:7
**sorry** [1] - 5:7
**sort** [3] - 14:19, 15:21,
20:11
**sorts** [1] - 28:11
**sounds** [1] - 29:19
**sovereign** [2] - 5:9,
5:10
**specific** [1] - 14:20
**specifics** [1] - 8:3
**specify** [1] - 24:25
**speculative** [2] - 17:2,
22:10
**spent** [1] - 18:11
**spinning** [1] - 12:2
**stages** [1] - 23:14
**stall** [1] - 7:10
**standpoint** [1] - 28:7
**stands** [1] - 17:5
**start** [1] - 11:5
**STATES** [2] - 1:1, 1:12
**States** [4] - 1:5, 5:9,
10:1, 11:17
**status** [2] - 3:15, 31:5
**STATUS** [1] - 1:11
**statute** [1] - 10:4
**stenography** [1] - 3:8
**still** [9] - 5:18, 7:2, 9:6,
12:15, 21:18, 23:10,
25:24, 25:25, 27:16
**stipulation** [1] - 25:15
**stray** [1] - 19:20
**Street** [5] - 1:23, 2:2,
2:6, 2:9, 3:1
**subject** [3] - 17:15,
19:20, 19:25
**submission** [1] -
15:16
**submissions** [1] -

21:5
**submit** [1] - 12:22
**substance** [1] - 17:16
**substantive** [1] -
22:19
**suggest** [1] - 11:19
**suggested** [1] - 12:16
**suggesting** [2] -
11:20, 12:20
**suite** [2] - 1:24, 2:20
**Suite** [2] - 1:20, 2:9
**summary** [42] - 3:25,
4:19, 4:22, 4:24,
6:11, 7:15, 7:17,
7:24, 8:12, 9:22,
10:8, 10:11,
10:13, 11:1, 11:11,
13:3, 13:6, 13:7,
13:9, 13:13, 14:11,
14:24, 15:9, 15:11,
17:3, 18:11, 23:16,
23:18, 24:22, 24:24,
25:2, 25:3, 26:25,
27:4, 27:11, 27:16,
28:2, 28:17, 28:22,
31:13
**supplement** [1] -
18:22
**supplemental** [1] -
16:19
**supports** [1] - 19:11
**suppose** [1] - 24:16
**supposed** [1] - 23:3
**supposedly** [1] - 19:8
**surcharges** [1] - 17:14

---

**T**

**Taiwan** [1] - 30:16
**TAM** [1] - 2:16
**telegraphed** [1] - 24:6
**Telephone** [1] - 3:6
**terms** [2] - 14:14, 29:7
**territorial** [1] - 10:4
**testimony** [2] - 9:12,
22:25
**THE** [68] - 1:12, 3:13,
3:18, 4:16, 5:7, 5:23,
6:1, 6:6, 6:21, 7:7,
7:12, 7:19, 7:25,
8:16, 8:21, 9:5, 9:16,
9:18, 13:10, 13:19,
14:7, 14:12, 14:18,
15:19, 16:10, 16:21,
19:7, 19:18, 20:11,
20:17, 21:17, 21:24,
22:5, 22:18, 23:6,
23:12, 23:16, 23:24,
24:1, 24:5, 24:13,
24:17, 25:5, 25:8,

25:11, 25:24, 26:9,
26:17, 26:22, 27:12,
28:9, 29:2, 29:11,
29:16, 29:19, 30:1,
30:3, 30:6, 30:8,
30:15, 30:18, 31:1,
31:4, 31:10, 31:13,
31:19, 31:22, 31:24
**theories** [3] - 10:8,
18:4, 18:6
**thereafter** [1] - 27:24
**therefore** [1] - 11:23
**they've** [1] - 24:5
**thinks** [1] - 28:22
**third** [2] - 9:13, 19:21
**Third** [1] - 1:15
**third-party** [1] - 19:21
**three** [4] - 8:25, 22:12,
23:9, 30:10
**Thursday** [3] - 31:10,
31:20, 31:22
**timing** [1] - 7:10
**today** [2] - 25:16,
28:15
**together** [1] - 27:23
**TOLKIN** [1] - 3:5
**Tomkins** [1] - 14:1
**TOMPKINS** [2] - 2:7,
14:1
**tone** [1] - 21:6
**took** [1] - 22:12
**towards** [1] - 19:11
**Tower** [2] - 2:1, 2:24
**Trans** [1] - 31:12
**Transcript** [1] - 3:8
**TRANSCRIPT** [1] -
1:11
**Transcription** [1] - 3:9
**treated** [1] - 14:22
**trial** [5] - 12:13, 12:20,
26:8, 26:14, 28:10
**trying** [5] - 7:10,
10:25, 21:14, 26:3,
26:15
**turn** [1] - 10:9
**two** [7] - 13:22, 19:5,
23:9, 23:22, 29:17,
30:3, 30:6

---

**U**

**U.S** [2] - 9:24, 10:2
**ultimately** [1] - 4:9
**under** [3] - 7:1, 16:4,
20:6
**UNIMAN** [1] - 2:11
**Uniondale** [1] - 2:24
**UNITED** [2] - 1:1, 1:12
**United** [4] - 1:5, 5:9,
10:1, 11:17

**unless** [4] - 3:21, 16:1,
25:4, 29:2
**unnecessary** [2] - 4:3,
6:20
**unusual** [1] - 26:10
**up** [9] - 14:14, 14:21,
19:24, 20:21, 23:2,
23:19, 23:20, 27:15,
27:19
**useful** [2] - 24:13,
28:4

---

**V**

**variability** [1] - 14:14
**various** [2] - 9:7, 28:5
**vehemently** [1] -
24:15
**view** [1] - 18:7, 28:22
**viewing** [1] - 28:5
**VIKTOR** [1] - 1:12
**virtually** [1] - 13:5
**vital** [1] - 8:12

---

**W**

**wait** [1] - 12:23
**waiting** [5] - 5:13, 7:6,
8:13, 12:15, 16:9
**waived** [1] - 20:3
**Walnut** [1] - 1:23
**wants** [3] - 3:21,
15:16, 24:2
**Washington** [3] -
2:10, 2:20, 3:2
**waste** [2] - 18:10, 28:6
**ways** [1] - 16:11
**Wednesday** [1] - 31:6
**week** [4] - 26:13,
26:23, 30:21, 31:18
**weeks** [4] - 23:23,
29:17, 30:3, 30:6
**weigh** [1] - 28:13
**wheels** [1] - 12:2
**WILSON** [1] - 2:5
**WING** [1] - 2:16
**Wolkoff** [2] - 11:3,
24:1
**WOLKOFF** [6] - 2:3,
11:3, 24:2, 24:12,
24:14, 32:4
**world** [1] - 10:2
**Worldwide** [2] - 2:1,
2:2
**write** [1] - 21:9
**wrote** [4] - 20:16,
20:25, 21:1, 21:15

---

**Y**

**YAN** [1] - 2:16
**year** [1] - 19:5
**years** [3] - 13:22, 19:5,
21:25
**YORK** [1] - 1:1
**York** [12] - 1:5, 1:16,
1:20, 2:6, 2:12, 2:16,
2:24

---

**Z**

**Zealand** [4] - 2:9, 8:3,
16:17, 22:11